COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CHRISTOPHER CALDERON, | | No. 08-08-00257-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 168th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20050D04774) |
| | § | |

## O P I N I O N

Christopher Calderon pled guilty to possession of a controlled substance and was sentenced to four years' confinement in the Texas Department of Criminal Justice, Institutional Division. On appeal, Appellant challenges the denial of his motion to suppress. For the reasons that follow, we affirm.

### FACTUAL BACKGROUND

On September 9, 2005, El Paso Police Officer Jesus Ayala was dispatched to an apartment complex at 1450 George Dieter, El Paso, Texas regarding an "unknown problem." Officer Ayala was familiar with the apartment complex and knew the complainant's unit was located in the central part of the complex. No names or descriptions of suspects were given. When Officer Ayala arrived at the scene and parked his vehicle, he observed Appellant walking in the other direction and carrying a white plastic trash bag. At this point, the officer was approximately ten to fifteen feet away from Appellant. Officer Ayala "had a good idea that [Appellant] may be possibly related to the incident that [he] was being dispatched on," so he asked Appellant for directions to the apartment. He observed that Appellant was not walking toward a trash can but was walking at a

hurried pace toward another building in the complex.

When Officer Ayala asked for directions, Appellant immediately started walking away from him at a faster pace. The officer walked toward Appellant and again asked for directions. At that point, Appellant dropped a clear plastic baggie containing a white substance that the officer suspected to be cocaine. By this time, Ayala was only three to five feet from Appellant. Officer Ayala asked Appellant to stop, but Appellant began walking even faster and was almost jogging. As Officer Ayala prepared to pursue him, Appellant dropped the trash bag and stopped. Officer Ayala retrieved the plastic baggie Appellant had discarded and the white substance inside was later identified as cocaine. Officer Ayala also searched the trash bag and discovered drug paraphernalia, a scale, a spoon to measure cocaine, and more cocaine. A personal search revealed approximately $4,000 in U.S. currency stashed in Appellant's crotch area.

## MOTION TO SUPPRESS

In his sole point of error, Appellant complains that the trial court erred in denying the motion to suppress because the arresting officer did not have probable cause to stop and question him.

### Standard of Review

We review a trial court's ruling on a motion to suppress using the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). Because the trial judge is the sole trier of fact regarding credibility and weight to be given to a witness's testimony, we do not engage in our own factual review of the trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We give almost total deference to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of

credibility and demeanor. *Montanez v. State*, 195 S .W.3d 101, 106 (Tex.Crim.App. 2006). A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are reviewed *de novo*. *Id*.

When ruling on a motion to suppress, the trial court is the sole and exclusive trier of fact. *Romero*, 800 S.W.2d at 543. We review a trial court's decision on a motion to suppress under an abuse of discretion standard. *Gaines v. State*, 99 S.W.3d 660, 665 (Tex.App.--Houston [14th Dist.] 2003, no pet.). Under this standard, we give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Id*. We will reverse the trial court's decision only when it appears an erroneous legal standard was applied or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *DuBose v. State*, 915 S.W.2d 493, 497-98 (Tex.Crim.App. 1996). As long as the trial court's ruling is within the "zone of reasonable disagreement," we will not intercede. *Id*. at 497. But we review *de novo* a trial court's determination of reasonable suspicion and probable cause. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997).

An accused seeking to suppress evidence on the basis of illegal police conduct bears the burden of proof to rebut a presumption of proper police conduct. *Moreno v. State*, 124 S.W.3d 339, 344 (Tex.App.--Corpus Christi 2003, no pet.). The accused satisfies the burden by proving that the police acted without a warrant. *Id*. The burden then shifts to the State to either produce a warrant or prove the reasonableness of the disputed conduct. *Id*. If the State produces a warrant, the burden of proof shifts back to the accused to demonstrate the invalidity of the warrant. *Id*. We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id*. at 345. This is true even if the decision is correct for reasons different

than those articulated by the trial court.  *Id*.

*Abandoned Property*

Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct.  *McDuff v. State*, 939 S.W.2d 607, 616 (Tex.Crim.App. 1997); *Brimage v. State*, 918 S.W.2d 466, 507 (Tex.Crim.App. 1996); *Comer v. State*, 754 S.W.2d 656, 659 (Tex.Crim.App. 1986).  When police take possession of abandoned property independent of police misconduct, there is no seizure under the Fourth Amendment.  *McDuff*, 939 S.W.2d at 616; *Hawkins v. State*, 758 S.W.2d 255, 257 (Tex.Crim.App. 1988).

As the State correctly points out, the issue is whether the actions of Officer Ayala resulted in a "seizure" of Appellant, for if Appellant dropped or disposed of the contraband *after* being unlawfully seized, the abandonment was not voluntary.  But if Appellant abandoned the contraband *before* being seized, the abandonment would not be the product of police misconduct, and Appellant's constitutional protection against unlawful search and seizure was not violated.

*Encounters Between Officers & Citizens*

A police officer may approach an individual in a public place, ask him whether he is willing to answer questions, and pose questions to the person if he is willing to listen.  *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002)(finding that reasonable suspicion is required for a detention, but not an encounter).  During an encounter, the individual is free to ignore the officer and walk away.  *Munera v. State*, 965 S.W.2d 523, 527 (Tex.App.--Houston [14th Dist.] 1997, pet. ref'd). So long as a reasonable person would feel free to disregard the officer and go about his business, the encounter is consensual and will not trigger Fourth Amendment protection.  *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).  Even when officers have no basis for suspecting a particular individual, they may ask him general questions or ask to examine his

identification, as long as the police do not convey a message that compliance with their request is required. *See id.* at 434-35, 111 S.Ct. at 2386.

A detention requires an officer to have a reasonable suspicion to believe that an individual is involved in criminal activity. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). A detention is justified when the detaining officer has specific articulable facts which when taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.* The controlling question is whether the actions of the officer would have made a reasonable person feel that he was not free to decline the officer's request or otherwise terminate the encounter. *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999). A police officer's conduct in asking questions and requesting consent to search does not alone render an encounter a detention. *Hunter v. State*, 955 S.W.2d 102, 106 (Tex.Crim.App. 1997). A consensual encounter becomes a detention only if the officer conveys a message that compliance is required. *Id.*

In *California v. Hodari D.*, four or five youths hanging out at a street corner fled at the approach of an unmarked police car. 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The two officers in the police vehicle became suspicious, and one officer gave foot-pursuit of Hodari. *Id.* at 623. During the pursuit, Hodari discarded a rock of crack cocaine before being tackled by the pursuing officer. *Id.* at 623. The issue before the court was whether, at the time he dropped the drugs, Hodari had been "seized" within the meaning of the Fourth Amendment. *Id.* at 624. Finding that a seizure could be implicated by the exercise of "physical force" or a "show of authority" to which the subject yields, the court held that since Hodari had not yet yielded to the officer's pursuit, he was not "seized" until the police officer tackled him. *Id.* at 625-26, 629. The court ruled that the drugs Hodari abandoned when he was running were not the fruit of a seizure, and Hodari's

motion to suppress evidence was properly denied. *Id*. at 629.

In *Johnson v. State*, the defendant and two men were in a breezeway of an apartment complex when approached by two officers. 864 S.W.2d 708, 712 (Tex.App.--Dallas 1993), *aff'd.* 912 S.W.2d 227 (Tex.Crim.App. 1995). When the three fled, one of the officers pursued Johnson, twice ordering him to stop. *Id*. at 712. Johnson was carrying a purple Crown Royal bag and a 9-mm pistol. *Id*. The officer ordered Johnson to drop the gun and drew his own weapon. Johnson dropped the bag and the weapon and eventually complied with the officer's orders to stop. *Id*. The purple bag contained cocaine and a large sum of money. *Id*. On appeal, Johnson argued that he had been "seized" when he was confronted by the officers in the breezeway, even though he ran at the sight of them. *Johnson v. State*, 912 S.W.2d at 234-35. The court determined that under both the Fourth Amendment and Article I, § 9, a seizure has not occurred until a person has been physically forced to yield or a person has yielded to the officer's show of authority. *Id*. at 235-36. The court found the cocaine to be admissible because Johnson had not been seized until he stopped running. *Id*.

Here, we conclude that Appellant was not seized when Officer Ayala initially approached him and asked for directions. The facts indicate a consensual encounter and do not trigger Fourth Amendment protection. Although Officer Ayala had no basis for suspecting that Appellant was related to the disturbance call, he could properly ask him general questions, including asking for directions. Appellant was free to ignore Officer Ayala, which he did, and continue to walk away. Officer Ayala in no way indicated to Appellant that compliance was required. Indeed, Appellant did not feel compelled to submit to any show of authority because he freely walked away. Because Appellant was not seized before he abandoned the drugs, the abandonment was voluntary, and the trial court did not abuse its discretion. We overrule the sole point and affirm the judgment of the trial court.

February 24, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.
Rivera, J., not participating

(Do Not Publish)