COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| HOWARD J. BEEM, | § | | |
| | | No. 08-09-00090-CR | |
| Appellant, | § | | |
| | | Appeal from the | |
| v. | § | | |
| | | County Court at Law Number Two | |
| THE STATE OF TEXAS, | § | | |
| | | of El Paso County, Texas | |
| Appellee. | § | | |
| | | (TC#20070C08572) | |
| | § | | |

**O P I N I O N**

A jury convicted Appellant, Howard J. Beem, of driving while intoxicated. The trial court sentenced Appellant to 180 days in the El Paso County jail, suspended the imposition of sentence, and placed Appellant on community supervision for two years. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3(a) (West Supp. 2010). In a single issue on appeal, Appellant challenges the trial court's denial of his pretrial motion to suppress evidence. We affirm.

**BACKGROUND**

*Motion to Suppress*

Appellant filed a motion to suppress evidence in which he alleged that the actions of "the El Paso Sheriff's Department Officer" violated his constitutional and statutory rights under: (1) the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (2) Article I, Section 9 of the Texas Constitution; and (3) Article 38.23 of the Texas Code of Criminal Procedure. For these reasons, Appellant contended that "[a]ny and all evidence seized in connection with this case was seized without warrant, probable cause[,] or other lawful authority" in violation of his rights.

*Suppression Hearing*

During Appellant's suppression hearing, the following evidence was elicited. At approximately 11 p.m. on June 4, 2007, El Paso Deputy Sheriff Tony Provencio and his partner, Deputy Richard Jaime, Jr., were sequentially dispatched to a bar across the street from the Sheriff's substation regarding a report of a public-intoxication "subject disturbance" and criminal mischief. Arriving first and without completely exiting his vehicle, Deputy Provencio encountered a barmaid who pointed at a white pickup truck that was leaving the area and stated, "There he goes[,] that's the one; there he goes." During this time, the truck, the only vehicle at the intersection, was driving away. Deputy Provencio spoke with the barmaid for a few more seconds to get more information, and then left in his vehicle, activated his dashboard camera and lights, and pursued the truck in order to investigate the assault.[1]

Thereafter, Deputy Jaime arrived at the bar, spoke with some of the bar patrons and staff, and ensured no one at the bar had been shot, stabbed, wounded, or needed immediate attention. Deputy Jaime learned from the barmaid that a patron who was described as being highly intoxicated, had been involved in an altercation, had been assaulted, and had left the bar in a vehicle. Deputy Jaime then departed to assist Deputy Provencio in locating the white truck for the purpose of further investigating the reported assault. He observed Detective Provencio trying to stop the white truck, and believed for a time that the truck's driver was attempting to evade them as one Sheriff's unit was behind the truck and the other was traveling beside the truck which, despite the Sheriff's display of lights and sirens, had not pulled over.

After eventually pulling over more than one-half mile later, Appellant stumbled out of the

---

[1] Deputy Provencio informed Deputy Jaime by radio that the person driving away had started an altercation at the bar and may have assaulted someone.

truck and appeared to be intoxicated. Deputies Provencio and Jaime observed that Appellant's face had been injured. After initially attempting to determine whether Appellant may have sustained other injuries, the deputies requested medical assistance for Appellant. Deputy Jaime testified that the primary purpose in stopping Appellant was to investigate if there had been an assault, and although Appellant advised the deputies that he had been assaulted, he also stated that he did not wish to prosecute the person who had assaulted him.

During their investigation of the assault, the deputies observed that Appellant had bloodshot eyes, was emitting a strong odor of alcohol, was unbalanced, had difficulty standing and walking, had slurred speech, and had urinated on himself. Based upon their observations, the deputies believed Appellant was intoxicated and because they had observed him driving a vehicle, they arrested him for driving while intoxicated.[2]

During the hearing, Appellant offered and the trial court admitted into evidence the videotapes from the deputies' dash cameras as well as Appellant's mug shot that was taken after his arrest. At the conclusion of testimony, defense counsel acknowledged that it had become evident to Deputy Provencio that he needed to pursue the truck after learning that an assault had taken place and after the barmaid had directed his attention to the white truck that was leaving. He argued, however, that a stop based on reasonable suspicion requires an articulation of the facts to form the basis for the opinion, and complained that the barmaid's statement that Appellant was highly intoxicated was conclusory as there was no evidence of how long Appellant had been in the bar or how many drinks he had consumed. Defense counsel also noted that it was clear that Deputy Jaime's basis for stopping Appellant was the assault. Directing the trial court's attention to Article 14.03 of the Texas Code of Criminal Procedure, Appellant complained that these facts did not permit a

_____

[2] Appellant was offered but declined to perform the standardized field sobriety test.

warrantless arrest for non-family assault as neither officer articulated any reasonable suspicion about Appellant's driving and had not concluded that Appellant was evading arrest. Relying on the United States Supreme Court's opinions in *Terry v. Ohio* and *Adams v. Williams*, Appellant contended that the deputies' investigatory detention was not related to a showing of criminal activity that needed to be immediately investigated as the circumstances lacked danger or immediacy. *See Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968) (establishing a reasonable-suspicion standard for brief, investigatory encounters between officers and citizens if the intrusion can be justified by articulable facts and inferences arising from those facts, permitting an officer to investigate "possibly criminal behavior even though there is no probable cause to make an arrest," and recognizing that a brief stop of a suspicious person in order to determine identity or to maintain status quo momentarily while obtaining more information, may be most reasonable in light of facts known to officer at the time); *Adams v. Williams*, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (recognizing that the adoption of an intermediate response as permitted under *Terry* may be the essence of good police work). Appellant did not argue that the officers lacked probable cause to arrest him for driving while intoxicated.

Finding that there was reasonable suspicion for the deputies to detain Appellant for investigation of the initial dispatch regarding the "subject disturbance" and criminal mischief, and finding that there was probable cause to arrest Appellant for driving while intoxicated, the trial court denied Appellant's motion to suppress, without issuing written findings of fact or conclusions of law as requested by Appellant.[3]

*Trial*

---

[3] Appellant does not complain on appeal that the trial court failed to enter written findings of fact and conclusions of law.

At trial, Appellant affirmatively stated, "No objection," to all non-testimonial evidence offered by the State, which included a map, the video recording from Deputy Provencio's dash camera, the video recording from Deputy Jaime's dash camera, and the written statutory warning showing that Appellant refused to provide a breath specimen for blood-alcohol concentration analysis.

## DISCUSSION

In a single issue, Appellant asserts that the trial court erred when it denied his motion to suppress evidence, which he contends was acquired as a result of an illegal traffic stop. Appellant argues that the State's evidence failed to establish that Deputies Provencio and Jaime had "probable cause" to stop him for "a violation of the criminal laws" and that the trial court erred in concluding that the deputies' "traffic stop" was justified under the *Terry* reasonable-suspicion standard. For these reasons, he argues that all evidence acquired as a result of the traffic stop should have been suppressed under the fruit-of-the-poisonous tree doctrine. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

### *Standard of Review*

A motion to suppress is a specialized objection to the admissibility of evidence and must be timely and sufficiently specific to inform the trial court of the complaint. *Johnson v. State*, 171 S.W.3d 643, 647 (Tex. App. – Houston [14th Dist.] 2005, pet. refused). A party who (1) files a pretrial motion to suppress evidence which presents arguments that are global in nature and contains little more than citations to constitutional and statutory provisions, and (2) fails to argue specific grounds for suppressing evidence at the suppression hearing, waives error. TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Mbugua v. State*, 312 S.W.3d 657, 666-67 (Tex. App. – Houston [1st Dist.] 2009, pet. refused) (general statements in a suppression

motion did not alert the trial court that the defendant wished a specific complaint to be decided); *Cisneros v. State*, 290 S.W.3d 457, 462 (Tex. App. – Houston [14th Dist.] 2009, pet. granted).

In a suppression hearing, the trial court is the sole finder of fact and may believe or disbelieve any of the evidence presented. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); *Pace v. State*, 986 S.W.2d 740, 744 (Tex. App. – El Paso 1999, pet. ref'd). We review a trial court's ruling on a motion to suppress using a bifurcated abuse-of-discretion standard. *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); *Krug v. State*, 86 S.W.3d 764, 765 (Tex. App. – El Paso 2002, pet. ref'd); *Urquhart v. State*, 128 S.W.3d 701, 704-05 (Tex. App. – El Paso 2003, pet. ref'd). Because the trial judge is the sole trier of fact regarding credibility and weight to be given to a witness's testimony, we do not engage in our own factual review of the trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Rather, almost total deference is given to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006), *citing Guzman*, 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are reviewed *de novo*. *Id*.

When conducting our review, we view the evidence in the light most favorable to the trial court's ruling on the suppression motion. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling on a motion to suppress or when the trial court makes no explicit fact findings and neither party has timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports these implied fact findings.

*Kelly*, 204 S.W.3d at 818-19.  We then review the trial court's legal ruling *de novo* unless the supported-by-the-record implied fact findings are also dispositive of the legal ruling. *Id.* at 819.  We are mindful that the party with the burden of proof assumes the risk of nonpersuasion and that upon losing, when the trial court does not make explicit fact findings, that party should usually lose on appeal. *Id.*; *Ross*, 32 S.W.3d at 855-56.  A court's ruling regarding a motion to suppress will be upheld if the decision made was based on any correct theory of law applicable to the case. *Ross*, 32 S.W.3d at 856.

### *Reasonable Suspicion*

Three categories of interactions between officers and citizens exist:  encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002), *citing Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). In an investigative detention, law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry*, 392 U.S. at 22.  The United States Supreme Court has held that the Fourth Amendment does not require a law enforcement officer lacking the precise level of information for probable cause to arrest to allow a crime to occur or a criminal to escape. *Adams*, 407 U.S. at 145.  Rather, under the Fourth Amendment and the *Terry* line of cases, "an officer may conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Terry*, 392 U.S. at 21-22, 30; *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150, 126 S.Ct. 1172 (2006); *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004).  The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Terry*, 392 U.S. at 27; *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).  The level of suspicion, however, is considerably less than proof of wrong-doing

by a preponderance of the evidence and need not rise to the level of probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Because the concept of reasonable suspicion is not readily, or even usefully, reduced to a neat set of legal rules in evaluating the validity of such a stop, we must make a fact-specific inquiry measured in objective terms by considering the totality of the circumstances, that is, the whole picture. *State v. Sheppard*, 271 S.W.3d 281, 288 (Tex. Crim. App. 2008); *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Kothe*, 152 S.W.3d at 63. A determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior as well. *Wardlow*, 528 U.S. at 125. Where conduct justifying a stop is ambiguous and susceptible of an innocent explanation, officers may detain an individual for the purpose of resolving the ambiguity. *Wardlow*, 528 U.S. at 125; *Terry*, 392 U.S. at 5-6, 30.

### Application

While we find that Appellant's pretrial suppression motion presents arguments that are global in nature and contain nothing more than citations to constitutional and statutory authority, our review of the record reveals that Appellant's suppression-hearing arguments, while sparse, meet the minimum threshold of specificity necessary to preserve error for our consideration. TEX. R. APP. P. 33.1; *see Swain*, 181 S.W.3d at 365. Because the trial court did not issue findings of fact or conclusions of law, we imply the necessary fact findings that are supported by the evidence. *Kelly*, 204 S.W.3d at 818-19.

We find the suppression-hearing evidence supports an implied finding that the deputies had a reasonable, articulable suspicion to detain Appellant for the purpose of further investigating criminal activity. Although initially dispatched to the bar regarding a reported "subject disturbance"

and criminal mischief, upon his arrival at the bar Deputy Provencio received additional objective information alleging that Appellant had been the instigator of an altercation and an offender in an assault, which is a criminal offense. TEX. PENAL CODE ANN. § 22.01 (West Supp. 2010). Thereafter, Deputy Provencio observed Appellant driving away in a white truck, which was already at a traffic intersection. At that time, based on the information provided to him, Deputy Provencio possessed a reasonable, articulable suspicion that an assault had been committed, and he was permitted to stop Appellant for the purpose of further investigating the reported assault. *Terry*, 392 U.S. at 21-22, 30; *Brother*, 166 S.W.3d at 257; *Kothe*, 152 S.W.3d at 63-64.

Contrary to Appellant's complaint on appeal, Deputy Provencio did not need probable cause to merely stop Appellant as part of his assault investigation. *Terry*, 392 U.S. at 21-22, 30; *Brother*, 166 S.W.3d at 257; *Kothe*, 152 S.W.3d at 63-64. Moreover, although Deputy Jaime was later informed that Appellant was the assault victim rather than the offender, this conflicting information provided an additional basis for further investigating the reported assault for the purpose of resolving the ambiguity of whether Appellant was a victim or an offender. *Wardlow*, 528 U.S. at 125; *Terry*, 392 U.S. at 5-6, 30. This ambiguity was resolved because the deputies stopped Appellant and learned that he had been assaulted.

We find the evidence, when viewed in the light most favorable to the trial court's ruling, supports an implied finding of reasonable suspicion. *Kelly*, 204 S.W.3d at 818-19. The trial court's denial of Appellant's motion to suppress evidence is based upon a correct theory of constitutional law as applicable to the case and we find no error in the trial court's ruling. *Ross*, 32 S.W.3d at 856. Because the trial court did not err in denying Appellant's motion to suppress evidence, Appellant's sole issue on appeal is overruled.

**CONCLUSION**

The trial court's judgment is affirmed.


                                        GUADALUPE RIVERA, Justice

March 30, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)